# PD

## UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

Herman D. Jackson, Jr.          :
128 West Chew Avenue            :
Philadelphia, PA 19120          :
                                :
                    Plaintiff   :       CIVIL ACTION
v.                              :
                                :       DOCKET NO.:
Brown's Super Stores, Inc.      :                        17   2830
d/b/a Shop Rite                 :
700 Delsea Drive                :
Westville, NJ 08093             :
                                :
                    Defendant   :

## COMPLAINT

Comes now Plaintiff, Herman D. Jackson, Jr., by and through counsel Albert J. Michell,

Esquire, and for his Complaint and cause of action, states as follows:

## PARTIES

1.      Plaintiff Herman D. Jackson, Jr. (hereinafter "Mr. Jackson" or "Plaintiff") is an adult

male resident of the Commonwealth of Pennsylvania who lives at 128 West Chew Avenue,

Philadelphia, Pennsylvania 19120.

2.      Defendant Brown's Super Stores, Inc. d/b/a Shop Rite (hereinafter "Brown's" or

"Defendant") is a Pennsylvania corporation that does business as Shop Rite in various eastern

Pennsylvania locations, with corporate offices located at 700 Delsea Drive, Westville, NJ 08093.

3.      Defendant owns and operates several eastern Pennsylvania supermarkets known as Shop

Rite Supermarkets and is "engaged in an industry affecting commerce" within the meaning of the

Americans with Disabilities Act of 1990, 42 U.S.C. Section 12111(2) (hereinafter "ADA") and

the Americans with Disabilities Act Amendments Act of 2008 (hereinafter "ADAAA").

4.      For each working day and for each of twenty (20) or more calendar weeks in the calendar

year 2015 and at all other times relevant hereto, Defendant employed fifty (50) or more persons.

5.      At all times relevant to this action Defendant was a "covered entity" as defined under

Section 12111(2) of the ADA and the ADAAA.

6.      At all times relevant to this action Defendant was an "employer" within the meaning of Section 4 of the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. Section 954.

7.      At all times relevant to this action Defendant was an "employer" of Plaintiff within the meaning of Section 5 of the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. Section 955.

## JURISDICTION

8.      Jurisdiction of this Court comes under 28 U.S.C. Sec. 1331 (federal question) based on Mr. Jackson's claims under the ADA and ADAAA.

9.      The state law components of this action arise under the Pennsylvania Human Relations Act, 43 P.C. Section 955, *et seq*. This Court has supplemental subject matter jurisdiction over all state law components of this action pursuant to 28 U.S.C. Section 1367(a).

## VENUE

10.      Venue in this district is proper because the discriminatory acts complained of occurred at Defendant's facilities located in Philadelphia and Montgomery County, Pennsylvania, and Plaintiff resides in Philadelphia, Pennsylvania.

## PROCEDURAL REQUIREMENTS

11.      On or about September 15, 2015, within 300 days of the occurrence of the acts of discrimination of which he complains, Plaintiff Herman D. Jackson, Jr. filed a Charge against Defendant with the Pennsylvania Human Relations Commission (hereinafter "PHRC") alleging disability discrimination. Said charge was concurrently filed with the Equal Employment Opportunity Commission (hereinafter "EEOC").

        To date, neither the PHRC or the EEOC has reached a conciliation agreement to which Plaintiff is a party.

        Plaintiff received from the EEOC a Notice of Right To Sue, dated May 31, 2017, allowing him to sue in Federal Court within ninety (90) days. (See attached.)

2

## FACTS

12.     Plaintiff was hired by Defendant in or about November 2011 as a Maintenance Worker. In or about May 2012 Plaintiff became a Loss Prevention Officer with Defendant.

13.     In his capacity as Loss Prevention Officer Plaintiff conducted surveillance and prevented customer and employee theft and secured the facilities, among other things.

14.     Plaintiff was consistently rated in the top three of a total of approximately 14 Loss Prevention Officers in the organization.

15.     In approximately March, 2013 Plaintiff developed chronic deep vein thrombosis, multiple pulmonary emboli, with multiple blood clots in his legs and lungs, left leg soft tissue swelling and ulcers (hereinafter "condition").

16.     Plaintiff suffers from shortness of breath, and difficulty walking and standing for long periods of time due to his condition.

17.     Defendant became aware of Plaintiff's condition in May, 2014, at the latest, when Plaintiff was treated on an in-patient basis with Penn Medicine from May 23, 2014 through June 1, 2014 and missed approximately one month of work due to his condition.

18.     In 2015, Plaintiff received extensive medical treatment for his condition, which included medications including but not limited to Colace and Coumadin and regular blood testing and evaluations.

19.     In 2014 Plaintiff's direct supervisor was Loss Prevention Supervisor Eric (LNU), and the overall manager of Loss Prevention was Loss Prevention Manager Lou Devinsky.

20.     In or about April 2015 Lou Devinsky left the employment of Defendant and Eric took his place, with Evan Gilbert assuming Eric's prior position of Loss Prevention Supervisor.

21.     In or about May 2015 Eric's employment with Defendant ended.

22.     At that time Plaintiff was required to have his blood checked approximately twice a week due to his changes in medication, this required Defendant to reasonably accommodate Plaintiff's need to take off several hours a week for these appointments.

23.     Plaintiff would go to these and other condition-related appointments and properly submit the required notes to his employer.  Defendant employer reasonably accommodated him by allowing him take the time off and make up the one or two hours of work per week that he would

3

miss.

24.     In or about July, 2015 Craig Gage was hired by Defendant as Loss Prevention Manager, a position two levels above Plaintiff.

25.     On or about July 31, 2015 Plaintiff went to Defendant's Cheltenham Facility, met with human resources and explained to them his decline in health and increase in upcoming medical treatment.

26.     At or about that time Plaintiff requested, and was subsequently given, paperwork necessary to apply for temporary disability benefits and FMLA leave from work. The email correspondence containing these documents was cc'd to a number of management level individuals in Defendant's employ, included Mr. Gilbert.

27.     Plaintiff kept the above paperwork and decided to try to work through his condition for as long as possible before taking leave.

28.     On or about August 17, 2015, prior to his going on vacation, Plaintiff requested a personal day for August 31, 2015 in order to attend a doctor's appointment for his condition.

29.     Upon returning from vacation on August 30, 2015 Plaintiff called supervisor Mr. Gilbert and was informed that Mr. Gilbert had forgotten to put in for Plaintiff's personal day on August 31, 2015, but that he would take care of it.

30.     On September 1, 2015, his scheduled day off, Plaintiff went to another doctor's appointment for his condition and the doctor expressed alarm and scheduled an emergency MRI on September 5, 2015 and a followup visit to the MRI on September 11.

31.     At his earliest opportunity, on September 2, 2015, Plaintiff told Mr. Gilbert about the MRI scheduled for September 5, 2015 and the followup doctor's visit of September 11 and asked permission to be able to take off work for the appointments.

32.     Mr. Gilbert refused to grant Plaintiff permission to go to the emergency MRI on September 5, 2015 and said that his absence would be considered a call-out and he would receive a verbal warning. When Plaintiff protested, Mr. Gilbert told him to call Mr. Gage.

33.     After Plaintiff called Mr. Gage and explained the situation, Mr Gage also refused to grant Plaintiff the time off for September 5 and informed Plaintiff that he had to give reasonable notice for these appointments and any absence would result in a verbal warning.

4

34.     Plaintiff responded that it wasn't fair because he himself did not have lengthy advance notice of the emergency MRI, to no avail.

35.     Fearful for his health, Plaintiff kept his appointment on September 5th and received a verbal warning from Defendant.

36.     Several days later Mr. Jackson was instructed to and did meet with Mr. Gilbert and Mr. Gage.

37.     During this meeting Mr. Gilbert began explaining to Mr. Gage Plaintiff's condition and the procedures the company had followed to accommodate his medical appointments. Mr. Gage then glared at Mr. Gilbert until he stopped explaining.

38.     Mr. Gage then issued Plaintiff a written warning (in addition to his verbal warning) for the September 5th appointment, thus skipping a step in Defendant's progressive disciplinary policy.

39.     Plaintiff subsequently attended his scheduled followup doctor's appointment on September 11, 2015.

40.     The next day, September 12, 2015, Mr. Gage issued the regular weekly work schedule for the Loss Prevention Officers and Plaintiff, who had been on the morning shift for three years, was now scheduled for the less desirable night shift for approximately 5 days over the next week.

41.     Plaintiff asked Mr. Gilbert about this change in schedule whereupon Mr. Gilbert indicated that Plaintiff should check with employee Anthony Davis, who, unbeknownst to Plaintiff, had been promoted to Loss Prevention Manager.

42.     Plaintiff had helped train Anthony Davis as a fellow Loss Prevention Officer.

43.     Plaintiff had superior loss prevention qualifications than Mr. Davis, who after the promotion was now Plaintiff's manager.

44.     Plaintiff was then abruptly terminated by Defendant on September 14, 2015.

45.     Plaintiff is and was at all times material and relevant herein a disabled individual as defined by the ADA/ADAAA.

46.     Plaintiff has a record of physical impairments that substantially limit one or more of his major life activities and is, and has been perceived by Defendant as, a disabled individual.

47.     Subsequent to Plaintiff's termination from the position; Defendant did not eliminate this

5

position.

48.     Upon information and belief, subsequent to Plaintiff's termination Defendant replaced
him with a less qualified employee who was not disabled or FMLA protected.

49.     At all times prior to his termination, Plaintiff was capable and qualified to perform the
duties of his positions and in fact did so satisfactorily perform those duties.

## COUNT I
### Violation of ADA/ADAAA
### (disability discrimination)

50.     Plaintiff incorporates Paragraphs 1 through 49 as though set forth in full herein.

51.     Defendant by and through its agents and employees discriminated against Plaintiff
because of his disability/perceived disability (hereinafter "disability") by means of its above
conduct, including but not limited to:

    (a)     improperly disciplining Plaintiff for false reasons;

    (b)     failing to provide reasonable accommodations for Plaintiff's disability as
    indicated above;

    (c)     placing Plaintiff on night shift;

    (d)     failing to promote Plaintiff; and

    (e)     terminating Plaintiff.

52.     Defendant discriminated against Plaintiff with regard to the terms, conditions, privileges,
and benefits of his employment based upon his disability/perceived disability. This constitutes
violation of the ADA/ADAAA.

53.     Defendant's acts of discrimination as aforesaid were intentional, willful, and in reckless
disregard of Plaintiff's rights and interests.

54.     As a direct result of Defendant's willful, wrongful, and unlawful actions in discriminating
against Plaintiff in violation of the ADA/ADAAA, Plaintiff has endured pain and suffering,
severe emotional distress, humiliation, embarrassment, loss of self-esteem, damage to his
reputation, and loss of income and benefits and interest due thereon.

55.     The above described acts and omissions of Defendant with regard to Plaintiff were

6

extreme and outrageous and were committed with a malicious, willful, and/or reckless indifference to the federally protected rights of Plaintiff, warranting punitive damages.

**WHEREFORE,** Plaintiff Herman D. Jackson, Jr. demands judgment in his favor and against Defendant and requests that this Court order that:

(a)     Defendant compensate Plaintiff for the wages and other benefits and emoluments of employment lost because of Defendant's unlawful conduct;

(b)     Defendant pay to Plaintiff compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses as allowable; and

(c)     Defendant pay to Plaintiff all other legal and equitable relief recoverable under the ADA, including, but not limited to, punitive damages, reinstatement with applicable seniority, attorneys' fees, expert witness fees, the costs of this action, and pre-and post-judgment interest.

**COUNT II**
Violation of PHRA
(disability discrimination)

56.     Plaintiff incorporates Paragraphs 1 through 55 as though set forth in full herein.

57.     The actions of Defendant by and through its agents and employees in discriminating against Plaintiff because of his disability/perceived disability, as aforesaid, constituted violations of the Pennsylvania Human Relations Act, Title 43 Pa. Cons. Stat. Ann. Section 951 *et seq.*

58.     Defendant by and through its agents and employees discriminated against Plaintiff because of his disability/perceived disability (hereinafter "disability") by means of its above conduct, including but not limited to:

(a)     improperly disciplining Plaintiff for false reasons;

(b)     failing to provide reasonable accommodations for Plaintiff's disability as indicated above;

(c)     placing Plaintiff on night shift;

(d)     failing to promote Plaintiff; and

7

(e)     terminating Plaintiff.

59.     Defendant discriminated against Plaintiff with regard to the terms, conditions, privileges, and benefits of his employment based upon his disability/perceived disability. This constitutes violation of the PHRA.

60.     As a direct result of Defendant's willful, wrongful, and unlawful actions in discriminating and retaliating against Plaintiff in violation of the PHRA, Plaintiff has endured pain and suffering, severe emotional distress, humiliation, embarrassment, loss of self-esteem, damage to his reputation, and loss of income and benefits and interest due thereon.

61.     Defendant's acts of discrimination as aforesaid were intentional, willful, and in reckless disregard of Plaintiff's rights and interests.

        **WHEREFORE,** Plaintiff Herman D. Jackson, Jr. demands judgment in his favor and against Defendant and requests that this Court order that:

        (a)     Defendant compensate Plaintiff for the wages and other benefits and emoluments of employment lost because of its unlawful conduct;

        (b)     Defendant pay to Plaintiff compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses as allowable; and

        (c)     Defendant pay to Plaintiff all other legal and equitable relief recoverable under the PHRA, including, but not limited to, reinstatement with applicable seniority, attorneys' fees, expert witness fees, the costs of this action, and pre-and post-judgment interest.

## COUNT III
### Violation of ADA/ADAAA
### (disability-based hostile work environment)

62.     Plaintiff incorporates Paragraphs 1 through 61 as though set forth in full herein.

63.     By the conduct set forth in the Statement of Facts above, Defendant engaged in unlawful employment discrimination in violation of the Americans with Disabilities Act, 42 U.S.C.S. Section 12111, *et seq*.

64.     The conduct of Defendant, by and through its agents and employees, toward Plaintiff based upon his disability or perceived disability established a hostile work environment and

8

included:

     (a)     Defendant's intentional discrimination outlined above in Count I; and

     (b)     Defendant's harassing and disparaging comments and actions concerning

Plaintiff's requested accommodations for medical treatment.

65.     Such harassment was based upon Plaintiff's disability/perceived disability.

66.     Such harassment was severe and pervasive enough to alter the conditions of Plaintiff's employment and to create an abusive and hostile working environment.

67.     Defendant knew, or should have known, of the harassment and failed to take prompt, effective remedial action.

68.     There existed in Defendant respondeat superior liability for the actions of its agents and employees.

69.     The unlawful employment practices outlined above were intentional.

70.     Defendant engaged in the unlawful employment practices outlined above with malice or reckless indifference to the federally protected rights of Plaintiff, warranting punitive damages.

71.     As a result of Defendant's actions and conduct, Plaintiff has suffered emotional pain and distress, loss of income, loss of benefits, mental anguish, and loss of enjoyment of life's pleasures.

**WHEREFORE,** Plaintiff Herman D. Jackson, Jr. demands judgment in his favor and against Defendant and requests that this Court order that:

     (a)     Defendant compensate Plaintiff for the wages and other benefits and emoluments of employment lost because of its unlawful conduct;

     (b)     Defendant pay to Plaintiff compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses as allowable; and

     (c)     Defendant pay to Plaintiff all other legal and equitable relief recoverable under the ADA, including, but not limited to, punitive damages, reinstatement with applicable seniority, attorneys' fees, expert witness fees, the costs of this action, and pre-and post-judgment interest.

9

## COUNT IV
### Violation of PHRA
(disability-based hostile work environment)

72.     Plaintiff incorporates Paragraphs 1 through 71 as though set forth in full herein.

73.     By the conduct set forth in the Statement of Facts above, Defendant engaged in unlawful employment discrimination in violation of the Pennsylvania Human Relations Act, Title 43 Pa. Cons. Stat. Ann. Section 951 *et seq*.

74.     The conduct of Defendant, by and through its agents and employees, toward Plaintiff based upon his disability or perceived disability established a hostile work environment and included:

      (a)     Defendant's intentional discrimination outlined above in Count II; and

      (b)     Defendant's harassing and disparaging comments and actions concerning Plaintiff's requested accommodations for medical treatment.

75.     Such harassment was based upon Plaintiff's disability/perceived disability.

76.     Such harassment was severe and pervasive enough to alter the conditions of Plaintiff's employment and to create an abusive and hostile working environment.

77.     Defendant knew, or should have known, of the harassment and failed to take prompt, effective remedial action.

78.     There existed in Defendant respondeat superior liability for the actions of its agents and employees.

79.     The unlawful employment practices outlined above were intentional.

80.     Defendant engaged in the unlawful employment practices outlined above with malice or reckless indifference to the protected rights of Plaintiff.

81.     As a result of Defendant's action and conduct, Plaintiff has suffered emotional pain and distress, loss of income, loss of benefits, mental anguish, and loss of enjoyment of life's pleasures.

**WHEREFORE,** Plaintiff Herman D. Jackson, Jr. demands judgment in his favor and against Defendant and requests that this Court order that:

      (a)     Defendant compensate Plaintiff for the wages and other benefits and emoluments

of employment lost because of its unlawful conduct;

(b)     Defendant pay to Plaintiff compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses as allowable; and

(c)     Defendant pay to Plaintiff all other legal and equitable relief recoverable under the PHRA, including, but not limited to, reinstatement with applicable seniority, attorneys' fees, expert witness fees, the costs of this action, and pre-and post-judgment interest.

## COUNT V
### Violations of FMLA
### (willful interference/retaliation)

82.     Plaintiff incorporates Paragraphs 1 through 81 as though set forth in full herein.

83.     Defendant was on a "witch hunt" to find a reason to terminate Plaintiff as demonstrated by the above facts, notably, that Defendant intentionally harassed and terminated him shortly after he requested paperwork for disability and FMLA leave and prior to his filling out the paperwork.

84.     By and through its course of conduct Defendant violated the FMLA by interfering with Plaintiff's exercise of his rights under the FMLA by terminating Plaintiff's employment.

85.     Defendant violated the FMLA by intentionally and willfully interfering with Plaintiff's rights under the FMLA to take medical leave by retaliating against him for his requesting application paperwork for FMLA leave by terminating him prior to his filling out said paperwork.

86.     As a direct result of Defendant's willful, wrongful, and unlawful actions, Plaintiff has endured pain and suffering, medical expenses, severe emotional distress, humiliation, embarrassment, loss of self-esteem, damage to his reputation, and loss of income and benefits and interest due thereon.

**WHEREFORE,** Plaintiff Herman Jackson demands judgment in his favor and against Defendant and requests that this Court order that:

(a)     Defendant compensate Plaintiff for the wages and other benefits and emoluments

11

of employment lost because of its unlawful conduct;

(b)    Defendant pay to Plaintiff compensatory damages for future pecuniary losses; and

(c)    Defendant pay to Plaintiff all other legal and equitable relief recoverable under the FMLA including, but not limited to, front pay, back pay, attorneys' fees, exemplary damages, expert witness fees, the costs of this action, and pre-and post-judgment interest.

## JURY DEMAND

Plaintiff requests trial by jury on all counts.

DATED: 6/22/2017

/s/ Albert J. Michell
Albert J. Michell, Esquire
**ALBERT J. MICHELL, P.C.**
40 West Evergreen Avenue
Suite 104
Philadelphia, PA 19118
*Please send correspondence to:*
P.O. Box 4062
Philadelphia, PA 19118
Telephone: 215.922.2588
Attorney ID # 76797
Validation of Signature Code: AJM4598

12

# EXHIBIT # 1
# NOTICE OF RIGHT TO SUE LETTER

EEOC Form 161-B (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To:  **Herman D. Jackson, Jr.**
     **1037 West Tabor Road**
     **2nd floor apt.**
     **Philadelphia, PA 19141**

From:  **Philadelphia District Office**
       **801 Market Street**
       **Suite 1300**
       **Philadelphia, PA 19107**

☐  *On behalf of person(s) aggrieved whose identity is
    CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **17F-2016-60982** | **Legal Unit** | **(215) 440-2828** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice;** or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒  More than 180 days have passed since the filing of this charge.

☐  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

**Spencer H. Lewis, Jr.,**
**District Director**

May 31, 2017
*(Date Mailed)*

cc:  **BROWN'S SUPER STORES, INC.**

**Albert J. Mitchell, Esq.**
**ALBERT J. MICHELL, P.C.**
**P.O. Box 4062**
**Philadelphia, PA 19118**

**Anthony S. Fiergang, Esq.**
**FIERGANG & SIMMONS PC**
**540 Pennsylvania Ave # 202**
**Fort Washington, PA 19034**